**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| KIRSTEN MOORE,<br>         PLAINTIFF,<br><br>v.<br><br>CAPITAL MITIGATION SERVICES, LLC<br>d/b/a "REVENUE REPORTING SERVICES," and<br>ARCH INSURANCE COMPANY,<br>         DEFENDANT. | CASE NO.: 4:26-cv-353 |

## COMPLAINT

### JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

2. Supplemental Jurisdiction exists pursuant to 28 U.S.C. § 1367.

3. This action arises out of the violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Texas Finance Code by Capital Mitigation Services, LLC ("CMS" and/or "Defendant" or "Defendants").

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that Defendant transacts business in this judicial district and a substantial portion of the acts giving rise to this action occurred in this District.

5. Plaintiff resides in this District.

### PARTIES

6. Plaintiff, Kirsten Moore ("Plaintiff"), is an adult individual residing in Harris County, Texas, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1).

7. CMS is a New York LLC operating from Allegany, New York.

1

8. CMS can be served in the state of Texas via its registered agent, Corpoaration Service Company d/b/a CSC-Lawyers Inc., at 211 East 7th Street, Suite 620, Austin, TX 78701, or in accordance with the law of the state of Texas or New York or the Federal Rules of Civil Procedure.

9. CMS's website (https://revenuereportingservices.com/services/) (last visited January 15, 2026) states:

> Third party collection service – Whether you are a broker looking to place debt or a company looking for account recovery services, Revenue Reporting Services is the place for you!
> …
> Revenue Reporting Services is committed to recovering the lost revenue of our clients….

10. As will be described below, CMS called Plaintiff and engaged Plaintiff in telecommunication in order to collect an alleged debt from Plaintiff that was previously owed to a third-party.

11. The principal purpose of CMS is the collection of debts using the mails and telephone and other means.

12. CMS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property, or services which are the subject of the transactions are primarily for personal, family or household purposes.

13. CMS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

14. Defendant Arch Insurance Company ("Arch") is a foreign entity and is the surety company for the bond CMS has on file with the Texas Secretary of State, bond number

SU1181039.  Arch is liable for acts committed by CMS pursuant to, and to the extent provided by, Chapter 392 of the Texas Finance Code and a bond secured pursuant thereto, as well as any other applicable law.

## FACTUAL ALLEGATIONS

15. At some time in the past, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, namely an amount due and owing on a personal account (hereinafter the "Account").  Specifically, the account was a loan from Emoney USA, the credit on which was used to pay for various personal effects, but was not used for any business or commercial purposes.

16. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and is a "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

17. The Account allegedly went into default with the original creditor.

18. Plaintiff admits the existence of the Account, but disputes the amount CMS attempted to collect from him.

19. Because of the fraudulent nature of the business practices employed by CMS as described below, Plaintiff respectfully requests that CMS cease all further communications regarding the Account.

20. After the Account allegedly went into default, the Account was placed with CMS for collection.

21. During the one year prior to the filing of this complaint, more specifically in January 2026, CMS called Plaintiff and threatened her that if she did not agree to a repay plan CMS would sue her.

22. On information and belief, CMS has never sued a consumer in the state of Texas to recover an allegedly defaulted financial obligation.

23. The threat to sue her was false, misleading and deceptive and misrepresented the status of the Account and the nature of the services rendered by CMS.

24. CMS did not have the present intention of suing Plaintiff on the Account at the time it threatened to do so.

25. The language used by CMS would cause the least sophisticated consumer to believe that she would be sued on the Account if she did not agree to a repayment plan.

26. Plaintiff asked that CMS not contact any of her family members or her place of employment.

27. When Plaintiff told CMS that she could not agree to a repayment plan immediately, CMS told Plaintiff that it would call her family members and her place of employment until she agreed to repay the Account.

28. Very soon after of the above-described conversation – on the same day – CMS called Plaintiff's mother and left a message asking for information about the whereabouts of Plaintiff.

29. CMS did not have Plaintiff's consent to communicate with her mother – or anyone else – in connection with its attempts to collect the Account.

30. The call from CMS to Plaintiff's mother, almost immediately after speaking with Plaintiff, was meant to harass Plaintiff and cause Plaintiff to feel helpless and to feel that CMS would bother Plaintiff's family until she relented and agreed to make payments on the Account.

4

31. Plaintiff was humiliated and embarrassed and angered to learn that CMS was harassing her mother in order to get Plaintiff to pay.

32. Further, CMS also called Plaintiff's place of employment several times after Plaintiff asked CMS not to call her at work.

33. CMS knew that it was inconvenient for her to receive calls at work, but CMS called her place of employment anyway.

34. Like the calls to her mom above, these calls to Plaintiff's place of employment – after speaking with Plaintiff and establishing a working phone number at which to reach her – were meant to harass Plaintiff and cause Plaintiff to feel helpless and to feel that CMS would bother her at work until she relented and agreed to make payments on the Account.

35. CMS's collection practices caused Plaintiff to suffer fear, anxiety, stress, sleeplessness, mental anguish, humiliation mild depression and/or distraction from normal life.

36. In every communication with Plaintiff, CMS failed to inform Plaintiff that CMS was a debt collector, that CMS was attempting to collect a debt and/or that any information obtained would be used for the purpose of debt collection.

37. CMS never provided Plaintiff with notice of his rights to dispute the debt or to request validation of the debt as required by 15 U.S.C. § 1692g.

38. By demanding immediate payment on the Account, CMS overshadowed Plaintiff's right to validation and/or to dispute the Account.

39. CMS did not provide Plaintiff with meaningful disclosure of its identity in its communications with Plaintiff.

40. CMS's sole purpose for making the statements was to intimidate Plaintiff into making a payment on the Account.

41. CMS 's purpose for communicating with Plaintiff and/or his mother was to attempt to collect the Account.

42. The telephone calls described above each constituted a "communication" as defined by FDCPA § 1692a(2).

43. The only reason that CMS and/or its representative(s), employee(s) and/or agent(s) made telephone call(s) to Plaintiff and/or his mother was to attempt to collect the Account.

44. All of the conduct by CMS alleged in the preceding paragraphs was done knowingly and willfully.

45. As a consequence of CMS's collection activities and communication(s), Plaintiff seeks damages and attorneys fees and costs pursuant to 15 U.S.C. § 1692k and damages, an injunction, attorneys fees and costs pursuant to Tex. Fin. Code § 392.403.

## **RESPONDEAT SUPERIOR**

46. The representative(s) and/or collector(s) at CMS were employee(s) and/or agents of CMS at all times mentioned herein.

47. The representative(s) and/or collector(s) at CMS were acting within the course of their employment at all times mentioned herein.

48. The representative(s) and/or collector(s) at CMS were under the direct supervision and control of CMS at all times mentioned herein.

49. The actions of the representative(s) and/or collector(s) at CMS are imputed to their employer, CMS.

## **COUNT I:  VIOLATIONS OF THE FDCPA 15 U.S.C. §1692, et seq. BY CAPITAL MITIGATION SERVICES, LLC**

50. The previous paragraphs are incorporated into this Count as if set forth in full.

51. The act(s) and omission(s) of CMS and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. § 1692c generally and § 1692c(b) specifically 15 U.S.C. § 1692d generally and § 1692d(2)&(6) specifically and §1692e generally and specifically §1692e(2)&(3)&(5)&(7)&(8)&(10)&(11)&(13) and §1692g(a).

52. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from CMS.

## COUNT II:  VIOLATIONS OF THE TEXAS FINANCE CODE BY CAPITAL MITIGATION SERVICES, LLC

53. The previous paragraphs are incorporated into this Count as if set forth in full.

54. The act(s) and omission(s) of CMS and its representative(s), employee(s) and/or agent(s) violated Tex. Fin. Code §392.304(a)(5)&(8)&(14)&(17)&(19).

55. Pursuant to Tex. Fin. Code §392.403(a)(1), Plaintiff seeks an injunction against CMS enjoining it from future violations of the Texas Finance Code as described herein.

56. Pursuant to Tex. Fin. Code §392.403(a)(2) Plaintiff seeks damages from CMS.

57. Pursuant to Tex. Fin. Code §392.403(b) Plaintiff seeks attorney's fees and costs from CMS.

## COUNT III:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY CAPITAL MITIGATION SERVICES, LLC

58. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, CMS is liable to Plaintiff for invading Plaintiff's privacy (intrusion on seclusion). CMS intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

59. Plaintiff suffered actual damages from CMS as a result of the intrusion on Plaintiff's privacy.

### COUNT VI:  IMPUTED LIABILITY OF ARCH INSURANCE COMPANY FOR LIABILITY OF CAPITAL MITIGATION SERVICES, LLC

60. The previous paragraphs are incorporated into this Count as if set forth in full.

61. The act(s) and omission(s) of CMS and its representative(s), employee(s) and/or agent(s) in violation of Tex. Fin. Code §392.304(a)(5)&(8)&(14)&(17)&(19) are imputed to Arch pursuant to Tex. Fin. Code § 392.102.

62. Pursuant to Tex. Fin. Code § 392.102 and § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Arch.

### EXEMPLARY DAMAGES

63. Exemplary damages should be awarded against CMS because the harm with respect to which Plaintiff seeks recovery of exemplary damages resulted from malice (which means that there was a specific intent by CMS to cause substantial injury or harm to Plaintiff) and/or gross negligence (which means that CMS's actions and/or omissions (i) when viewed objectively from CMS's standpoint at the time of the acts and/or omissions involved an extreme degree of risk, considering the probability and magnitude of potential harm to others and (ii) were such that CMS had an actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of  others).

### JURY TRIAL DEMAND

64.    Plaintiff is entitled to and hereby demands a trial by jury.

8

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court grant the following:

65.    Judgment in favor of Plaintiff and against Capital Mitigation Services, LLC as follows:

a.   Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

b.   Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

c.   Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

d.   Actual damages pursuant to Tex. Fin. Code §392.403(a)(2);

e.   An injunction permanently enjoining CMS following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code §392.403(a)(1);

f.   Reasonable attorneys fees and costs pursuant to Tex. Fin. Code §392.403(b); and

g.   Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

h.   Such other and further relief as the Court deems just and proper.

66.    Judgment in favor of Plaintiff and against Arch Insurance Company as follows:

a.   The amount of damages assessed against CMS, up to $10,000.00, pursuant to the Tex. Fin. Code § 392.102 and § 392.403; and

b.   Such other and further relief as the Court deems just and proper.

9

Respectfully submitted,

THE WOOD FIRM, PLLC

/s/ Jeffrey D. Wood
Jeffrey D. Wood, Esq.
ArkBN: 2006164
11610 Pleasant Ridge Rd.
Suite 103 – Box 208
Little Rock, AR  72223
TEL:  214-914-8374
FAX:  888-598-9022
EMAIL:  jeff@jeffwoodlaw.com
Attorney for Plaintiff

10